# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHAEL GRADY and KATHLEEN GRADY, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) No. 23-226 |
| MONSANTO COMPANY, *et al.*, | ) ) **JURY TRIAL DEMANDED** |
| Defendants. | ) ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, *et seq.* and 28 U.S.C. § 1442(a)(1), defendants Monsanto Company ("New Monsanto"), Solutia Inc. ("Solutia"), Pharmacia LLC ("Pharmacia" or "Old Monsanto"), and Eastman Chemical Company ("Eastman") (collectively, "Defendants") remove this action to the United States District Court for the Eastern District of Missouri. As grounds for removal, Defendants state:

1. This Court has jurisdiction and the case is removable pursuant to 28 U.S.C. § 1442(a)(1), in that Defendants are being sued for actions they took under contract with, or at the direction of, the federal government, and wish to assert federal affirmative defenses.

2. Consent of all co-defendants is not required when removal is invoked under 28 U.S.C. § 1442(a)(1). *See, e.g.*, *Fernandez v. Tyson Foods, Inc.*, 509 F. Supp. 3d 1064, 1068, fn. 1 (N.D. Iowa 2020); *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960) ("The 'general government' must be able to assure each of its officers that a federal forum will be available if he wishes it, whether others sued with him wish it or no."); *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("Since the federal officer is the only one

entitled to remove under § 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court."); and *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965) ("[I]t is settled that the filing of a petition for removal by a single federal officer removes the entire case to the federal court.").

## BACKGROUND

3. On January 25, 2023, Plaintiffs Michael Grady and Kathleen Grady ("Plaintiffs") filed a Motion for Leave to File a Second Amended Petition against Defendants in the Circuit Court, Twenty-Second Judicial Circuit, City of St. Louis, Missouri, styled *Michael Grady and Kathleen Grady v. Monsanto Co.,* et al., Case No. 2022-CC09797 ("Lawsuit"). A copy of the Lawsuit and other state court pleadings are attached as **Exhibit 1**. The state court subsequently granted Plaintiffs' Motion for Leave to proceed with their Second Amended Petition.

4. On January 25, 2023, Defendants received a copy of Plaintiffs' Second Amended Petition. It was on this date that Defendants were first able to ascertain the removability of this action.

5. Plaintiffs' Second Amended Petition alleges, in relevant part, that Defendants manufactured, stored, transported, leaked, and spilled dioxin at Defendants' W.G. Krummrich plant in Sauget, Illinois in a manner that eventually caused, or contributed to cause, Michael Grady's alleged Multiple Myeloma, pulmonary hypertension, cardiomyopathy, atrial fibrillation, chronic obstructive pulmonary disease, and/or hypertension. As explained below, the alleged manufacture, storage, transportation, leaking, and spilling of dioxin from the W.G. Krummrich plant, and Mr. Grady's alleged exposure to the same, arose under the direction and control of the federal government, thus giving rise to colorable federal defenses that warrant the removal of this action under 28 U.S.C. § 1442(a)(1).

**THIS CASE IS REMOVABLE UNDER 28 U.S.C. § 1442(a)(1)**

6. Federal officer removal under 28 U.S.C. § 1442(a)(1) is appropriate when "(1) the defendant is a 'person' under the statute; (2) the defendant was 'acting under' the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal connection between the defendant's actions and the official authority; and (4) the defendant raises a 'colorable' federal defense." *Graves v. 3M Company*, 447 F. Supp. 3d 908, 913 (D. Minn. 2020) (citing *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012) (abrogated on other grounds)).

7. The Supreme Court of the United States has made clear that the federal officer removal statute must be "liberally construed," "thus the typical presumption against removal does not apply." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

8. This action satisfies all four requirements of the federal officer removal statute.

**I.  Old Monsanto is a "person" under § 1442(a)(1)**

9. It is settled, as a matter of law, that a corporation is a "person" for purposes of § 1442(a)(1). 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the word[ ] 'person' . . . include[s] corporations . . ."); *see also Lopez v. Three Rivers Elec. Co-op.*, 166 F.R.D. 411, 412 (E.D. Mo. 1996).

**II.  Old Monsanto acted under federal officers and agencies**

10. A defendant acts under federal officers and agencies when its actions involve "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007).

11. Old Monsanto acted under federal officers and agencies, and assisted them in performing their official functions, in the following respects:

3

12. During the Vietnam War, the Department of Defense contracted with Old Monsanto to manufacture an herbicide known as Agent Orange. The military used Agent Orange as a defoliant in Vietnam to aid in its military objectives. *In re "Agent Orange" Product Liability Lit.*, 304 F. Supp. 2d 442, 449 (E.D.N.Y. 2004), *aff'd*, 517 F.3d 129 (2d Cir. 2008).

13. Between 1965 and 1968 or 1969, Old Monsanto manufactured Agent Orange according to specifications given by the Department of Defense. *Id.* Agent Orange was a mixture of two chemical compounds: 2,4-D and 2,4,5-T. *Id.* Old Monsanto manufactured 2,4-D at the W.G. Krummrich Plant and 2,4,5-T at a plant in West Virginia. It combined the two chemical compounds into Agent Orange at the W.G. Krummrich Plant, again, according to specifications supplied by the Department of Defense.

### III. Plaintiffs' claims arise, in whole or in part, from actions taken by Old Monsanto to assist federal officers and agencies

14. A defendant acts under the color of federal authority when there is a causal connection between the plaintiff's alleged harm and the defendant's asserted official authority. *Graves v. 3M Company*, 17 F.4th 764, 769 (8th Cir. 2021).

15. The Lawsuit arises, in whole or in part, from the actions that Old Monsanto took in furtherance of the foregoing activities under the direction, supervision, and control of the federal government.

16. As stated above, Old Monsanto manufactured 2,4-D at the W.G. Krummrich Plant and 2,4,5-T at a plant in West Virginia. It combined the two chemical compounds into Agent Orange at the W.G. Krummrich Plant according to specifications supplied by the Department of Defense.

17. One of the ingredients in Agent Orange, 2,4,5-T, is alleged to contain certain amounts of a chemical popularly known as dioxin. Thus, Agent Orange, which Old Monsanto

4

prepared to Department of Defense specifications, can also contain certain amounts of dioxin, which Plaintiffs have placed directly at issue. *See* SAP ¶ 105 ("That as a direct and proximate result of the carelessness and negligence of Monsanto, Plaintiff was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed . . . dioxin . . . thereby causing, or contributing to cause, Plaintiff to develop Multiple Myeloma, and pulmonary hypertension, cardiomyopathy, atrial fibrillation, chronic obstructive pulmonary disease, and hypertension.").

18. Old Monsanto manufactured and handled Agent Orange in accordance with specifications set by the Department of Defense and in accordance with then-prevailing environmental standards. *See Illinois ex rel. Raoul v. Monsanto Company*, Case No. 22-C-5339, 2023 WL 130525, at *2 (N.D. Ill. Jan. 9, 2023) ("Defendants have submitted undisputed evidence that [Old Monsanto] was producing Agent Orange for the government at the Krummrich Plant during the Viet Nam War and did so pursuant to government specifications. Absent defendants' aid, the government would have had to manufacture the product itself.").

19. The contracts between the federal government and the manufacturers of Agent Orange, including Old Monsanto, contained "detailed specifications for the herbicide," specifications that "were promulgated by the government." *In re "Agent Orange" Product Liability Lit.*, 304 F. Supp. 2d 442, 449 (E.D.N.Y. 2004), *aff'd*, 517 F.3d 129 (2d Cir. 2008). The government "commandeered the United States industry's entire capacity to manufacture 2,4,5-T." *Id.* Under the contract with the Department of Defense, the Department took title to and possession of the Agent Orange at the W.G. Krummrich Plant. To the extent that dioxin was released at the W.G. Krummrich Plant, a portion of those releases would have occurred during the period of time from 1965 to 1969.

20. Plaintiffs allege that "[f]rom in and around 1958 through 1972," *during the same time* that Old Monsanto manufactured and handled alleged dioxin-containing Agent Orange for the federal government, Plaintiff Michael Grady's "father worked for private contractors at the Monsanto Krummrich Plant in Sauget, Illinois," SAP ¶ 93, that Plaintiff Michael Grady's father "would come home with chemicals, including, upon information and belief . . . dioxin, on his car and on his cloths [sic]," *id.* ¶ 101, and that Plaintiff Michael Grady was "first exposed to these chemicals when he washed his father's car at his home and was in close proximity to his father at" his home. *Id.* Plaintiffs also allege that Plaintiff Michael Grady visited the W.G. Krummrich Plant over 20 times between 1966 and 1973, and that during these visits he would go "all over" the W.G. Krummrich Plant. *Id.* ¶ 122.

21. Mr. Grady's alleged exposure to dioxin at the W.G. Krummrich Plant would have occurred during the period of time that Old Monsanto manufactured and handled Agent Orange for the federal government. Thus, there is a causal connection between the federal mandate to Old Monsanto to produce Agent Orange, which contained certain amounts of dioxin, and the injuries for which Plaintiffs complain.

**IV.  Defendants have colorable defenses to Plaintiffs' claims**

22. The government contractor defense applies when "(1) the United States approved reasonably precise specifications; (2) the [product] conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the [product] that were known to the supplier but not to the United States." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).

23. Defendants have a colorable federal defense under the government contractor defense, in that Old Monsanto produced Agent Orange for the federal government under

reasonably precise specifications approved by the federal government, the Agent Orange conformed to those specifications, and the federal government knew at least as much as Old Monsanto about the potential dangers of Agent Orange.

24. Defendants have a colorable federal defense to Plaintiffs' claims based on 50 U.S.C.A. § 4557, in that the production, mixture, and sale of Agent Orange was done under an order of the Department of Defense.

## **REMOVAL IS TIMELY**

25. "Congress has created an exception for situations where [a] case was not removable as originally filed, but the defendant has later received the type of document described in 28 U.S.C. § 1446(b) making removability first ascertainable." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007).

26. § 1446(b) provides:

"If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ."

27. Plaintiffs' original Petition did not include allegations related to dioxin, the fundamental basis for the "removability" of this matter. Defendants were first able to ascertain the removability of this action upon receipt of Plaintiffs' Second Amended Petition on January 25, 2023.

28. This Notice of Removal has been filed within 30 days of January 25, 2023, when Defendants received Plaintiffs' Second Amended Petition.

29.     Defendants will serve all other parties with copies of this notice and will file a notice of filing of the same with the Clerk of the Circuit Court, Twenty-Second Judicial Circuit, City of St. Louis, Missouri, as required by 28 U.S.C. § 1446(d).

## JURY TRIAL DEMANDED

30.     Defendants demand a trial by jury on all issues.

WHEREFORE, Defendants Monsanto Company, Solutia Inc., Pharmacia LLC, and Eastman Chemical Company give notice that this Lawsuit is removed from the Circuit Court, Twenty-Second Judicial Circuit, City of St. Louis, Missouri, to the United States District Court for the Eastern District of Missouri, for the exercise of jurisdiction over the Lawsuit as though the Lawsuit had originally been instituted in this Court.

Dated: February 24, 2023                                  Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: */s/ Adam E. Miller*
Adam E. Miller, #40945
Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Phone: 314-690-0200
Email: amiller@shb.com

*Attorney for Defendants Monsanto Company, Pharmacia LLC, Solutia Inc., and Eastman Chemical Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on the below Plaintiffs' counsel by first-class mail and electronic mail on February 24, 2023.

Christopher W. Dysart, #37069
**The Dysart Law Firm**
16020 Swingley Ridge Rd.
Chesterfield, MO 63017
cdysart@dysart-law.com

*Attorney for Plaintiffs*

*/s/ Adam E. Miller*

*Attorney for Defendants Monsanto Company, Pharmacia LLC, Solutia Inc., and Eastman Chemical Company*